IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

|  |  |
|---|---|
| AIG SPECIALTY INSURANCE COMPANY f/k/a Chartis Specialty Insurance Company, an Illinois corporation,<br><br>Plaintiff,<br><br>v.<br><br>ESSENTIAL INGREDIENTS, INC., a Georgia corporation,<br><br>Defendant. | CIVIL ACTION NO.<br>_____ |

# **COMPLAINT FOR DECLARATORY JUDGMENT**

COMES NOW AIG Specialty Insurance Company ("ASIC"), by and through its attorneys, and brings this action seeking declaratory relief against the named defendant as follows:

**PARTIES, JURISDICTION, AND VENUE**

1. This is a diversity action for declaratory relief. This Court has authority to enter a declaratory judgment through the remedy created pursuant to 28 U.S.C. § 2201.

2. ASIC is a corporation organized and existing under the laws of the state of Illinois. ASIC maintains its principal place of business in the state of New York.

3. Essential Ingredients, Inc. ("EI" or "Defendant") is a corporation organized and existing under the laws of the state of Georgia. EI maintains its principal place of business in the state of Georgia.

4. This Court has subject matter jurisdiction over this case pursuant to 28 U.S.C. § 1332(a). There is complete diversity of citizenship between ASIC and EI. The amount in controversy, exclusive of interest and costs, exceeds the sum required by 28 U.S.C. § 1332.

5. This Court has personal jurisdiction over Defendant, and venue is proper in this District under 28 U.S.C. § 1391.

6. This action is brought pursuant to 28 U.S.C. § 2201, which provides the remedy of the Court's declaration of the rights of the parties under certain contracts between them. ASIC seeks a declaration of rights, status, and legal relations between it and Defendant under the contract of insurance described below.

7. More specifically, ASIC seeks a judgment declaring that it has no duty to defend or indemnify EI under a commercial general liability policy issued

by ASIC to EI for any claims, losses, or other damages or liabilities asserted by Christopher R. Mitchell ("Claimant") in the case styled *Christopher R. Mitchell v. Curtis Kaiser and Nicole Kaiser, et al.*, Civil Action No. 15-CI-294, which is currently pending in the Henderson Circuit Court, Commonwealth of Kentucky ("Underlying Action").

## BACKGROUND FACTS

### The Underlying Action

8. On June 25, 2015, Claimant filed the First Amended Complaint in the Underlying Action, alleging that on July 13, 2014, he was severely burned when Nicole Kaiser poured Napa Home & Garden "pourable eco-gel fuel" into a burning decorative firepot. (First Amended Complaint, attached hereto as Exhibit A, at ¶ 20.) Claimant alleges that "[t]he gel fuel ignited, exploded, and projected a torchlike directional flame from the bottle, which engulfed Plaintiff in flames." (Id.)

9. Claimant alleges that, while still engulfed in flames, he "performed the 'stop, drop & roll' fire safety technique to no avail." (Id. at ¶ 22.)

10. Claimant alleges that "[t]he gel fuel fire that consumed Plaintiff's body was difficult to extinguish because of the gel fuel's gel-like consistency. The

gel fuel continued to flame and burn until the gel fuel completely consumed itself." (Id. at ¶ 23.)

11. Claimant alleges that his injuries occurred while he was an invitee on the property of Curtis and Nicole Kaiser. (Id. at ¶ 64.)

12. Claimant further alleges that the gel fuel "contained Klucel® H Industrial Grade hydroxypropylcellulose, a nonionic, water-soluble cellulose ether used for thickening, stabilizing, and giving the fuel its gel-like consistency." (Id. at ¶ 44.)

13. Claimant alleges that "[a]s a result of the Klucel®, the gel fuel has a higher viscosity than liquid fuels, such as gasoline or kerosene; in fact, the gel fuel consistency is similar to molasses, honey, or napalm. The higher viscosity increases the risk of injury." (Id. at ¶ 45.)

14. More specifically, Claimant alleges:

> The presence of Klucel® and the higher viscosity makes the flaming gel fuel stick more readily than liquid to skin and clothing. As such, the fire safety technique, 'stop, drop and roll' is ineffective, and patting the flaming gel fuel actually spreads the burning surface. Using water to extinguish a gel fuel fire also is not likely to be effective because, to be successful, a significant amount of water would be needed, and initially pouring water on the fire is likely to spread the napalm-like flaming gel fuel over a larger surface area.

(Id. at ¶ 46.)

15. Claimant alleges that the Klucel® that caused his injuries "was distributed to the manufacturers of the gel fuel to be included in the gel fuel as a gelling agent" by EI. (Id. at ¶ 55.)

16. Claimant alleges that EI "knew that Klucel® should be kept 'away from heat, flame, sparks and other ignition sources,'" "knew or reasonably should have known of the dangers arising from the use of Klucel® in ethanol-based fuels," "specifically recommended and distributed Klucel® to the gel manufacturers to use as a gelling agent in the gel fuel," and "did not warn of the foreseeable dangers arising from the use of Klucel® in the gel fuel or inform consumers of the facts which make the Klucel® likely to become dangerous." (Id. at ¶¶ 56-59.)

17. Claimant alleges that he "suffered severe personal injuries as a direct and proximate result of the use of Klucel®, with its high viscosity and elevated burnout range of 250 to 500 degrees Celsius, in the gel fuel." (Id. at ¶ 60.)

18. Claimant subsequently filed a Second Amended Complaint which contains the same allegations described in paragraphs 8-17 above, and also alleges claims against EI based on theories of strict liability, negligence, failure to warn, express and implied warranties, and gross negligence. (Second Amended Complaint, attached hereto as Exhibit B at ¶¶ 73-103.)

## The Policy

19. ASIC issued Commercial General Liability Policy and Pollution Legal Liability Policy number EG 13823866 to EI, for a policy period of September 14, 2013 to September 14, 2014, that provided certain commercial general liability and pollution liability coverage to EI pursuant to the policy's terms, conditions and exclusions (the "Policy"). (Policy, attached hereto as Exhibit C.)

20. Coverage A of the Policy, titled "Bodily Injury and Property Damage Liability," states, in pertinent part:

> 1. Insuring Agreement
>
>     a. We will pay those sums that the insured becomes legally obligated to pay as damages because of **bodily injury**[1] or **property damage** to which this insurance applies. We will have the right and duty to defend the insured against any **suit** seeking those damages. However, we will have no duty to defend the insured against any **suit** seeking damages for **bodily injury** or **property damage** to which this insurance does not apply.
>
>     . . .
>
>     b. This insurance applies to **bodily injury** and **property damage** only if:
>
>     **(1)** The **bodily injury** or **property damage** is caused by an **occurrence** that takes place in the **coverage territory**; and

---

[1] Words emphasized in **bold** are defined terms under the Policy.

>    **(2)** The **bodily injury** or **property damage** occurs during the policy period;

(Exhibit C at p. 1 of 46.)

21. Thus, the Policy provides liability coverage to the insured for third party claims for damages because of **bodily injury** or **property damage** occurring during the policy period, if caused by an **occurrence**, and if no exclusions or conditions preclude coverage.

22. Endorsement 11 of the Policy states:

**<u>EXCLUSION - DESIGNATED PRODUCTS ENDORSEMENT</u>**

This endorsement modifies insurance provided under the following:

**COMMERCIAL GENERAL LIABILITY AND POLLUTION LEGAL LIABILITY COVERAGE FORM**

It is hereby agreed as follows:

**I.** **SECTION I - COVERAGES, COVERAGE A - BODILY INJURY AND PROPERTY DAMAGE LIABILITY** Paragraph **2. Exclusions** is amended by the addition of the following exclusion:

**Designated Products**

**Bodily injury** or **property damage** included in the **products-completed operations hazard** and arising out of any of **your products** shown in the Schedule below in this endorsement.

**II.** **SECTION I - COVERAGES, COVERAGE E - ADDITIONAL POLLUTION LEGAL LIABILITY** is amended by the addition of the following exclusion:

> **Designated Products**
>
> Solely with respect to **COVERAGE E-2 PRODUCTS POLLUTION AND EXPOSURE LIABILITY**, **bodily injury**, **property damage**, **environmental damage** or **emergency response costs** included in the **products-completed operations hazard** and arising out of any of **your products** shown in the Schedule below in this endorsement.
>
> **SCHEDULE**
>
> **Designated Product(s): (1)**
> Klucel, Fuel Gel, Fire Gel, or any similar product designed to burn that incorporates your product.

(Exhibit C at Form CI4372, p. 1 of 1.) (Hereinafter the "Klucel Exclusion.")

23. Thus, the Klucel Exclusion excludes **bodily injury** included in the **products-completed operations hazard** and arising out of Klucel, Fuel Gel, Fire Gel, or any similar product.

24. **Products-completed operations hazard** is a defined term in the Policy that describes certain types of bodily injury and other damage. It includes, in pertinent part, "all **bodily injury** . . . occurring away from premises you own or rent and arising out of **your product** . . . ." (Exhibit C at Form 103124, p. 43 of 46.)

25. **Your product** is defined, in pertinent part, as: "Any goods or products, other than real property, manufactured, sold, handled, distributed or disposed by . . . You." (Id. at p. 45 of 46.)

26. Thus, the **products-completed operations hazard** clause demonstrates the parties' intent to limit the Designated Products Exclusion to injury that arises out of the listed products but occurs somewhere other than the insured's property.

### ASIC Denies Coverage for the Underlying Action

27. On July 7, 2015, ASIC received the First Amended Complaint in the Underlying Action from EI. At the same time, EI specifically requested that ASIC consent to EI's choice of defense counsel: Weinberg Wheeler Hudgins Gunn & Dial ("Weinberg Wheeler").

28. In response, on or about July 7, 2015, ASIC requested from EI more information regarding its choice of counsel.

29. On July 13, 2015, ASIC's adjuster spoke with an attorney from Weinberg Wheeler, who, per the attorney, had already been retained by the insured. The attorney indicated that she had handled similar claims for EI for several years, including when EI was with a prior carrier. The attorney requested

permission to continue as EI's counsel in the Underlying Action based on her firm's prior experience.

30. EI's attorney also indicated that she had obtained an extension of time to respond to the complaint in the Underlying Action on EI's behalf.

31. On July 17, 2015, ASIC consented to EI's prior retention of Weinberg Wheeler.

32. On September 17, 2015, ASIC communicated to EI's retained defense counsel its position that the Underlying Action was not covered by the Policy due to the application of the Klucel Exclusion, and advised that, based on that lack of coverage, ASIC would withdraw its defense within thirty days.

33. On October 2, 2015, EI's defense counsel filed a Motion to Dismiss Plaintiff's Second Amended Complaint on behalf of EI.

34. No answer or other defenses were filed or raised at that time, and, upon information and belief, no responsive pleading is to be filed unless and until EI's Motion to Dismiss is denied.

35. On or about October 9, 2015, ASIC confirmed its declination of coverage by correspondence to EI. (October 9, 2015 correspondence, attached hereto as Exhibit D.)

36. On November 4, 2015, counsel for EI wrote a letter to ASIC purporting to "reject" its disclaimer of coverage for the Underlying Action. (November 4, 2015 correspondence, attached hereto as Exhibit E.)

37. Counsel for ASIC responded to this letter on December 29, 2015, further explaining ASIC's basis for denying coverage. (December 29, 2015 correspondence, attached hereto as Exhibit F.)

38. There is a bona fide present dispute between ASIC and EI regarding whether the Policy provides coverage to EI for the Underlying Action.

39. ASIC is entitled to a final judgment construing the Policy, resolving the dispute between the parties, declaring that ASIC has no duty to defend or indemnify Defendant with respect to any claims, losses, or other damages or liabilities asserted by Claimant in the Underlying Action, and declaring that ASIC is not estopped from denying coverage to EI for the Underlying Action.

## COUNT I
### (Declaration of No Coverage)

40. ASIC hereby incorporates by reference and realleges in Count I, as if fully stated herein, each and every allegation of Paragraphs 1 through 39 of this Complaint.

41. The Underlying Action alleges a **bodily injury**.

42. The Underlying Action alleges a **products-completed operations hazard** because it involves (i) a **bodily injury**; (ii) that occurred away from premises owned or rented by EI; (iii) arising out of a product distributed by EI.

43. The Underlying Action alleges that the **bodily injury** arose out of Klucel® and/or Fuel Gel and/or Fire Gel and/or a similar product designed to burn that incorporates EI's product.

44. Therefore, the Policy does not cover EI's claim because the Underlying Action is excluded by the Klucel Exclusion.

45. ASIC is entitled to a declaratory judgment in its favor stating that it has no obligation to defend EI in the Underlying Action and has no indemnity obligation to EI or Claimant under the Policy for any loss or other damages allegedly attributable to EI stemming from the Underlying Action.

### COUNT II
### (Declaration of No Waiver)

46. ASIC hereby incorporates by reference and realleges in Count II, as if fully stated herein, each and every allegation of Paragraphs 1 through 45 of this Complaint.

47. EI selected and retained its own defense counsel in the Underlying Action.

48. ASIC notified EI, through its retained defense counsel, that coverage for the Underlying Action would be disclaimed, and its defense withdrawn within thirty (30) days, on or about September 17, 2015.

49. Upon information and belief, this notification occurred before EI filed its motion to dismiss in the Underlying Action, and before EI filed any other motion or pleading in the Underlying Action, or raised any defenses.

50. EI never surrendered control of its defense in the Underlying Action.

51. When ASIC disclaimed coverage to EI in September 2015, no answer or responsive pleading had been filed in the Underlying Action, EI retained full control over when and if certain defenses or claims would be asserted, EI had not admitted any allegations of the complaint, and discovery had not yet begun. Therefore, the course of the litigation had not been irrevocably fixed.

52. ASIC is entitled to a declaratory judgment in its favor stating that it did not waive its right to disclaim coverage to EI for the Underlying Action, and is not estopped from denying coverage to EI for the Underlying Action.

WHEREFORE, ASIC prays that the Court render a declaration in its favor and declare that:

- ASIC has no obligation to defend EI in the Underlying Action and has no indemnity obligation to EI or Claimant under the Policy for any loss or

other damages allegedly attributable to EI stemming from the Underlying Action;

- ASIC did not waive its right to disclaim coverage to EI for the Underlying Action, and is not estopped from denying coverage to EI for the Underlying Action; and

- For such other and further relief as the Court may deem just and proper.

Respectfully submitted this 28th day of March, 2016.

    */s/ Christopher B. Freeman*
Christopher B. Freeman, GA Bar No. 140867
Meredith W. Caiafa, GA Bar No. 551409

CARLTON FIELDS JORDEN BURT, P.A.
1201 West Peachtree Street, Suite 3000
Atlanta, Georgia 30309-3455
Telephone: (404) 815-3400
Facsimile: (404) 815-3415
Email: cfreeman@carltonfields.com
Email: mcaiafa@carltonfields.com

***Attorneys for Plaintiff AIG Specialty Insurance Company***